ARTHUR R. KURTZ, Deputy Secretary Department of Agriculture,Trade Consumer Protection
You have requested my opinion as to the applicability of sec.100.15, Stats., the trading stamp law, to promotional plans in which no trading stamps or other similar devices are physically issued or delivered to a purchaser in connection with a sale although the purchaser may procure merchandise premiums, privileges or a thing of value after making a sufficient dollar volume of purchases.
The plans which you have described involve a customer identification card or number which is retained by the merchant for the purpose of recording the customer s purchases. The card or number provides the basis for the granting of premiums after the purchaser has reached a given dollar total of purchases.
One such plan involved the giving of small kitchen appliances to any person purchasing $300 worth of merchandise during a period of several months. In order to participate in the program, purchasers were required to register their name and address at the check-out counter. The check-out person would then fill out a store control card and give the purchaser a program card and identification number. The store would retain a store reference card. Each time the registered purchaser made a purchase the check-out person at the check-out counter would record on a piece of paper the amount of the purchase, the date of the purchase, and either the purchaser's identification number or name and address. The purchaser was not required to show the identification card but could verbally give the identification number to the check-out person. The merchant then transferred the purchase information to the store control card. When purchases totaled $300, the purchaser could obtain one of the small appliances. Purchases had to be recorded at the check-out counter. No purchaser was allowed to return with a register tape or other evidence of purchase and have the amount recorded. If the purchaser passed through the check-out point without registering the purchase, the purchaser could no longer register that purchase. When the purchaser received the gift, the merchant noted on the store control card what was given and the date it was given. The purchaser was not required to sign anything in order to obtain the merchandise premium or gift. *Page 112 
You have also indicated that a different merchant plans to implement a similar promotional plan in the near future. A purchaser in this program will either receive a free gift or be entitled to purchase other goods, such as small household appliances at a reduced price, depending on the total amount of purchases. Purchasers, after registering and receiving their identification cards and numbers, must either show the identification card to the checkout person at the check-out counter at the time of purchase, or verbally tell the check-out person what their identification number is. If purchasers do not have the cards with them, or forget their numbers, they must reregister and receive a new identification number. Under this plan, if the purchaser fails to register a purchase at the cash register, the purchaser may return at a later date and verbally inform the merchant of the amount of the purchase. This amount will then be recorded without the purchaser having to present a cash register receipt or any other evidence of the purchase. The merchant would, in effect, be taking the customer's word for it. You have advised that there could be a number of variants of this program, but that each would be conducted in a manner which would avoid the use of a cash register receipt as a trading stamp, or the inhand issuance of any other trading stamp or device in return for which the customer would obtain merchandise privileges or premiums.
You have indicated that there are two prior opinions by this office which have dealt with this issue and that it is your opinion that there exists a conflict between such opinions. The opinions are found at 14 Op. Att'y Gen. 336 (1925) and 15 Op. Att'y Gen. 536 (1926).
Section 100.15, Stats., provides as follows:
 "100.15 Regulation of trading stamps. (1) No person, firm, corporation, or association within this state shall use, give, offer, issue, transfer, furnish, deliver, or cause or authorize to be furnished or delivered to any other person, firm, corporation, or association within this state, in connection with the sale of any goods, wares or merchandise, any trading stamp, token, ticket, bond, or other similar device, which shall entitle the purchaser receiving the same to procure any goods, wares, merchandise privilege, or thing of value in exchange for any such trading stamp, token, ticket, bond, or other similar device, except that any manufacturer, packer, or dealer may issue any slip, ticket, *Page 113 
or check with the sale of any goods, wares or merchandise, which slip, ticket or check shall bear upon its face a stated cash value and shall be redeemable only in cash for the amount stated thereon, upon presentation in amounts aggregating twenty-five cents or over of redemption value, and only by the person, firm or corporation issuing the same; provided, that the publication by or distribution through newspapers, or other publications, of coupons in advertisements other than their own, shall not be considered a violation of this section; and provided further, that this section shall not apply to any coupon, certificate or similar device, which is within, attached to, or a part of any package or container as packed by the original manufacturer and is directly redeemed by such manufacturer." (Emphasis added.)
It is my opinion that the determinative language in sec.100.15, Stats., is the portion which has been emphasized above. In order for a violation of this section to occur, it is necessary that the purchaser receive the trading stamp, token, ticket, bond, or other similar device. Since under sec. 100.26
(3), Stats., the section in question is penal in nature, strict construction is appropriate.
8 Op. Att'y Gen. 14 (1919) stated that a program in which customers were given goods, wares, or merchandise by way of premium or rebate, or as an extra value, and in connection with the actual sale of other goods, wares and merchandise was not affected by the trading stamp law. In that opinion it was stated as follows:
 "Trading stamps have a rather well defined meaning and the statute is intended to cover the various trading stamp devices in the issuing of trading stamps. It goes no farther than the trading stamp field." at p. 14.
The opinion which you have noted at 14 Op. Att'y Gen. 336 (1925) deals with a fact situation in which the merchant retains a punched card and does not manually deliver it to the customer. This opinion indicated that the plan was in violation of the trading stamp law and based this opinion on a theory which might be described as "constructive receipt." In light of the penal nature of sec. 100.15, Stats., and the resulting strict reading of the language of the statute itself, I am inclined to disagree with the holding of this opinion. *Page 114 
In 15 Op. Att'y Gen. 536 (1926) the fact situation described is virtually identical to that described in 14 Op. Att'y Gen. 336 (1925) and the opinion reads in relevant part as follows:
 "The use of this card in the opinion of this department does not violate the above mentioned statute. Since the card is not delivered to the purchaser but is retained by the merchant and merely constitutes a record of sales made to the purchaser, similar in that respect to a ledger account, the card is not such an article as comes within the purview of the trading stamp act." at p. 536.
Unfortunately, this opinion makes no reference to 14 Op. Att'y Gen. 336 (1925) although it appears to reverse the previous opinion. The opinion at 15 Op. Att'y Gen. 405 (1926) supports the proposition that delivery to the customer is necessary in order to create a violation of the trading stamp law. In that opinion it was stated:
 "The use of card `D' does not violate the trading stamp law, for it is never delivered to the purchaser." at p. 407.
The opinion in 15 Op. Att'y Gen. 536 (1926) is cited with approval in 16 Op. Att'y Gen. 494 (1927).
In light of the language of the statute itself, and the prior opinions of this department, it is my opinion that a plan in which purchases are recorded on a device maintained by a merchant and never delivered to the customer does not violate sec. 100.15, Stats. 14 Op. Att'y Gen. 336 (1925) is repudiated.
BCL:RV